**The STATE of Ohio, Appellee,**

v.

**TIGER, Appellant.**

[Cite as *State v. Tiger*, 148 Ohio App.3d 61, 2002-Ohio-320.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 3182–M.

Decided Jan. 30, 2002.

Dean Holman, Medina County Prosecuting Attorney, and Joseph F. Salzgeber, Assistant Prosecuting Attorney, for appellee.

Nicholas Swyrydenko, for appellant.

WHITMORE, Judge.

{¶ 1}  Defendant–appellant Donald Tiger has appealed his conviction and sentence on one count of forgery, entered in the Medina County Court of Common Pleas.  This court affirms.

I

{¶ 2}  The Wadsworth Police Department received complaints from members of a church known as the Restored Church of God, which alleged that appellant had embezzled money from the organization.  Based on this information, Wadsworth police detectives obtained and executed a search warrant of appellant's home.  While conducting the search, police found numerous items of identification in the names of three persons other than appellant, a number of which contained appellant's photograph.  This information led police to search a storage unit appellant rented in the name of Walter J. Noble, one of the identities found

at appellant's home. In the storage unit police found documents from the state of Illinois bureau of unemployment showing that appellant had been receiving unemployment benefits from Illinois under the name of Donald Tiger. It was also discovered that appellant had opened and maintained several bank accounts at Charter One Bank under the name of Gregory Walburn, another of the identities discovered in appellant's home.

{¶ 3} After further investigation, appellant was indicted on one count of forgery, in violation of R.C. 2913.31(A)(2), a fifth-degree felony. Appellant pleaded not guilty and the case was tried to a jury. The jury found appellant guilty, and the court sentenced him accordingly. Appellant has timely appealed, and has asserted six assignments of error.

## II

### Assignment of Error I

{¶ 4} "Appellant's conviction for forgery was based upon insufficient evidence as a matter of law."

{¶ 5} Appellant has contended that his conviction for forgery is based upon insufficient evidence and must be reversed because the state failed to prove that (1) the false driver's license he used to open bank accounts under a fictitious name constitutes a "writing" or that (2) he possessed the requisite intent to defraud, i.e., "purpose to defraud," when he opened the bank accounts. This court disagrees.

{¶ 6} Sufficiency is a test of legal adequacy that measures whether the evidence underlying a conviction is sufficient as a matter of law to sustain the verdict. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. When reviewing the sufficiency of the evidence to support a criminal conviction, this court's function is to "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 7} Appellant was convicted of one count of forgery, in violation of R.C. 2913.31(A)(2), which states that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [f]orge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with

terms different from what in fact was the case, or to be a copy of an original when no such original existed[.]"

{¶ 8} The state furnished evidence to show that appellant forged an Illinois driver's license by presenting the false license to a bank and representing to the bank that he was the person shown on the license.[1] The state was not attempting to prove forgery in the making of the license but rather in the authentication of that license.

{¶ 9} Appellant has asserted that his forgery conviction is based upon insufficient evidence because "the state failed to present any evidence to establish that the driver's license * * * was a 'writing' as * * * defined under R.C. 2913.01(F) and used in the context of the [f]orgery statute." Appellant has argued that because subsection (B) of R.C. 2913.31 specifically prohibits the forging of "identification cards," subsection (A), which proscribes the forging of "writings," cannot be read to include cards of identification, such as a driver's license. We disagree.

{¶ 10} As reproduced above, R.C. 2913.31(A), under which appellant was charged and convicted, bans any person from forging any *"writing,"* with purpose to defraud, or knowing that he/she is facilitating a fraud. The violation of this subsection is a felony of the fifth degree. R.C. 2913.31(C)(1)(b). "Writing" is defined as "any computer software, document, letter, memorandum, note, paper, plate, data, film, or other thing having in or upon it any written, typewritten, or printed matter, and any token, stamp, seal, credit card, badge, trademark, label, or other *symbol of value, right, privilege, license, or identification.*" (Emphasis added.) R.C. 2913.01(F).

{¶ 11} Subsection (B) of R.C. 2913.31 broadly defines "identification card," proscribing the forging of any card that includes personal information for purposes of identification. Violation of R.C. 2913.31(B) is not a felony but a misdemeanor. R.C. 2913.31(C)(2). We reject appellant's contention that because a driver's license is a form of identification, forging one can only be a misdemeanor prosecuted under subsection (B) of R.C. 2913.31. A plain reading of the statute evinces the General Assembly's intention to include drivers' licenses under both subsections. Violation of subsection (A) is a felony because it requires the state to prove scienter, i.e., a "purpose to defraud," or "knowledge" that he or she was facilitating a fraud. R.C. 2913.31(A) and (C)(1)(b). Accordingly, we find no merit in appellant's argument.

---

1. " 'Forge' means to fabricate or create, in whole or in part and by any means, any spurious writing, * * * or [to] *purport to authenticate* any writing, when the writing in fact is not authenticated by that conduct." (Emphasis added.) R.C. 2913.01(G).

{¶ 12}   Appellant has also contended that the state failed to show that he had a "purpose to defraud" in purporting to authenticate the fake license to open the bank accounts because there was no evidence presented that he actually obtained a benefit or that he caused the bank a detriment.   He has argued that he received no benefit in opening and maintaining the accounts under a fictitious identity because he could have legally opened the same accounts under his real name of Donald Tiger.   We disagree.

{¶ 13}   Defraud means to "knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another."   R.C. 2913.01(B).   Purpose requires an intention to cause a certain result or to engage in conduct that will cause that result.   R.C. 2901.22(A). Purpose or intent can be established by circumstantial evidence from the surrounding facts and circumstances in the case.   See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492;  See, also, *State v. Seiber* (1990), 56 Ohio St.3d 4, 13–14, 564 N.E.2d 408.

{¶ 14}   The state was required to show that appellant had a *purpose*, an *intention*, to defraud, i.e., to benefit himself.   R.C. 2913.31(A).   The state was not required, as appellant has contended, to prove that he actually received a benefit or that the bank actually suffered a detriment.   See *H&W Door Co. v. Stemple* (Mar. 31, 1994), Portage App. No. 93–P–0031, 1994 WL 116257 (concluding that the fact that appellant stood to benefit evidenced his purpose to defraud as defined by R.C. 2913.01); *State v. Lee* (Nov. 25, 1983), Washington App. No. 82X16, 1983 WL 3305 (clarifying that in order for a person to have purpose to defraud under R.C. 2913.01, "one must merely knowingly intend to obtain some benefit or cause some detriment to another by way of deception").   The state demonstrated that appellant possessed three fake identifications.   Under the false identification of "Gregory Walburn," appellant opened business accounts at Charter One Bank. A bank employee testified that the bank is required to report any transaction of $3,000 or more to the federal government for monitoring of money laundering violations, and that appellant made a number of such transactions which were reported under the name of Gregory Walburn.   Under the false identification of "Walter J. Noble," appellant rented a storage unit.   The state argued that appellant, in using the fake identities, intended to benefit by concealing his true identity.

{¶ 15}   After reviewing the record in a light most favorable to the prosecution, this court finds that the state did present enough circumstantial evidence from which a rational trier of fact could have found beyond a reasonable doubt that appellant had a "purpose to defraud."   The first assignment of error is overruled.

## Assignment of Error II

{¶ 16} "Appellant's conviction was against the manifest weight of the evidence."

{¶ 17} In his second assignment of error, appellant has asserted that his conviction for forgery is against the manifest weight of the evidence because there was no evidence that the bank suffered any tangible detriment or that appellant received any actual benefit through the bank. This court disagrees.

{¶ 18} In determining whether a conviction is against the manifest weight of the evidence, this court must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 19} An appellate court that overturns a jury verdict as against the manifest weight of the evidence acts in effect as a "thirteenth juror," setting aside the resolution of testimony and evidence as found by the trier of fact. *Thompkins* (1997), 78 Ohio St.3d at 387, 678 N.E.2d 541. This action is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant. *Otten,* supra. It is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 20} This court explained in appellant's first assignment of error that the state was not required to show that appellant actually received a benefit or that the bank suffered a detriment. The state was required to prove only that appellant intended to benefit. After reviewing the record, this court finds that this is not the exceptional case where the evidence presented weighs heavily in favor of the defendant. We cannot conclude that the jury lost its way or created a manifest miscarriage of justice such that appellant's conviction must be reversed. Appellant's second assignment of error is overruled.

## Assignment of Error III

{¶ 21} "Appellant was improperly charged and convicted under the general provision for forgery, where the Revised Code contains more specific provisions providing for a lesser degree offense for the same alleged conduct."

{¶ 22} In his third assignment of error, appellant has argued that he was improperly charged and convicted of felony forgery because R.C. 2913.31(B)(1)

and R.C. 4507.30(A), which are both misdemeanor offenses, specifically relate to his conduct.

{¶ 23} Appellant's challenge to the indictment is not well taken. First, appellant has waived this issue by failing to raise it before the trial court. See State v. Joseph (1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285 (explaining that an appellant waives any challenge to an indictment which was not made before or during trial), appeal not allowed by (1997), 80 Ohio St.3d 1449, 686 N.E.2d 276. Furthermore, because the felony forgery statute under which appellant was charged and convicted includes the additional element of "purpose to defraud," it proscribes conduct that is substantially dissimilar from the conduct prohibited by R.C. 2913.31(B)(1) and R.C. 4507.30(A).[2] See State v. Volpe (1988), 38 Ohio St.3d 191, 527 N.E.2d 818; State v. Chippendale (1990), 52 Ohio St.3d 118, 120, 556 N.E.2d 1134. Accordingly, this court determines that appellant was not improperly charged and convicted under R.C. 2913.31(A)(2), and thus we find no merit to this assignment of error.

## Assignment of Error IV

{¶ 24} "The trial court abused its discretion in denying a continuance to allow appellant to retain new counsel, and in allowing appellant to represent himself at trial without a knowing and voluntary waiver of the right to counsel, and thereby deprived appellant the constitutional right to effective assistance of counsel."

{¶ 25} In his fourth assigned error, appellant has argued that the trial court abused its discretion in denying his counsel's motion to withdraw. He has specifically asserted that he did not make a knowing and intelligent waiver of his right to counsel, and therefore his conviction must be reversed. This court disagrees.

{¶ 26} It is well settled that a motion to withdraw as counsel is committed to the sound discretion of the trial court. State v. Edgell (1972), 30 Ohio St.2d 103, 111, 59 O.O.2d 134, 283 N.E.2d 145. An appellate court will not reverse the decision of the trial court in the absence of an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 27} Upon review of the record, it is obvious that the trial court did not abuse its discretion in denying the motion to withdraw. Appellant's jury trial

---

2. R.C. 2913.31(B)(1) prohibits anyone from knowingly forging an identification card. R.C. 4507.30(A) proscribes displaying or possessing a driver's license, if one knows that the license is fake, or has been canceled, revoked, suspended, or altered.

was originally scheduled for September 13, 2000. However, appellant requested, and was granted, five continuances; his trial was finally rescheduled for Monday, February 26, 2001. Late in the afternoon on Thursday, February 22, 2001, appellant's counsel filed a motion to withdraw as counsel. A hearing was held the following day on Friday, February 23. At the hearing appellant told the court that he was "not satisfied with [his] attorney[.]" Appellant's attorney informed the court that he was prepared to proceed with the scheduled trial. The court found that appellant had already delayed the trial for months and that if he had concerns about his attorney he should have raised them prior to two business days before trial. Based on the court's belief that appellant was attempting to delay the administration of justice, the court denied his counsel's motion to withdraw. Appellant then refused to have his counsel represent him, and proceeded to represent himself. The court required his counsel, however, to sit at the trial table and to provide appellant with legal advice.

{¶ 28} This court finds no merit in appellant's fourth assigned error.

### Assignment of Error V

{¶ 29} "Prosecutorial misconduct in closing argument denied appellant's right to a fair trial."

{¶ 30} Appellant has asserted that his conviction must be reversed because, he has contended, the prosecutor made improper comments during closing argument which "clearly 'could have' affected the outcome of [the] trial[.]" Appellant has acknowledged that he did not raise an objection at trial, and has requested this court to review the error under the plain error standard. The state has argued that the comments were not improper because they were a direct response to appellant's closing argument, and even if the comments were inappropriate, they did not deny appellant a fair trial.

{¶ 31} Appellant has taken issue with the following comments made by the prosecution during closing argument:

{¶ 32} "Probably the argument that's the most repugnant as he stands here and tells you that I sinned and he says he has repented before God. This man who refused to sit on a jury, refused to do his civic duty, who doesn't believe that a jury of 12 people should convict someone, that's his religious beliefs and he stands here in front of you and uses God to try to walk out of this courtroom because he has sinned. He's done more than sinned, he's committed a felony and no matter what he's done in his private moments doesn't excuse him nor should you excuse him for this crime that has been proven to you. * * *"

{¶ 33} Appellant has claimed that these statements were improper because he did not testify, and therefore information about his religious beliefs was not in

evidence. He has further contended that the reference to "civic duty" "was clearly and deliberately meant to inflame the jury and prejudice them[.]"

{¶ 34} A judgment can only be reversed on grounds of prosecutorial misconduct where the improper conduct deprived the defendant of a fair trial. See *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728. The Supreme Court of Ohio has addressed the limited circumstances in which a judgment may be reversed on grounds of prosecutorial misconduct, stating:

{¶ 35} "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. * * *

{¶ 36} "Given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial.

{¶ 37} "It is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless including most constitutional violations. * * *" (Citations omitted.) *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293.

{¶ 38} Appellant did not object to the prosecutor's comments. Accordingly, it is appellant's burden on appeal to prove that he was denied a fair trial, and, but for the error, the outcome of the trial would have been different. See *State v. Lane* (1995), 108 Ohio App.3d 477, 482, 671 N.E.2d 272, appeal not allowed by (1996), 75 Ohio St.3d 1494, 664 N.E.2d 1291. Appellant has not alleged that but for the prosecutor's comments, he would not have been found guilty of forgery; appellant has asserted that the prosecutor's comments "clearly '*could have*' affected the outcome of [the] trial[.]" (Emphasis added.) Accordingly, we find no merit in the fifth assignment of error.

## Assignment of Error VI

{¶ 39} "The trial court erred in sentencing appellant to multiple community control sanctions without fulfilling its mandatory duty to first consider imposition of either a fine or community service as the sole sanction, pursuant to R.C. 2929.13(A), and abused its discretion in imposing such multiple sanctions."

{¶ 40} Appellant has argued that the trial court abused its discretion in imposing a severe combination of sanctions rather than simply imposing one. He has asserted that the lower court failed to indicate on the record that it considered imposing a financial or community service sanction as the sole

sanction, and state its reasons for "denying Appellant the benefit of such a limited sanction." He has cited no law to support this contention.

{¶ 41} Appellant correctly points out that R.C. 2929.13(A) requires the court to consider imposing either a financial sanction or community service as the sole sanction upon a defendant eligible for a community control sanction. The statute, however, does not require the court to expressly state on the record that it considered such options, and set forth its reasons for imposing greater penalties. Compare with R.C. 2929.14(B) (requiring a trial court to make specific findings *on the record* when imposing more than the minimum prison sentence for first-time imprisonment), and R.C. 2929.19(B)(2)(d) (demanding a court to *make a finding that gives its reasons* for selecting the maximum allowable sentence). R.C. 2929.13(A) permits a court to "impose any sanction or combination of sanctions * * * provided in sections 2929.14 to 2929.18 of the Revised Code[,]" unless a specific sanction is required.

{¶ 42} Upon review of the record, this court finds that the lower court did not err in imposing a combination of sanctions. We find the sixth assigned error to be without merit.

### III

{¶ 43} Each of appellant's six assignments of error is overruled. The judgment of the court of common pleas is affirmed.

Judgment affirmed.

BATCHELDER, P.J., concurs.

BAIRD, J., dissents.

BAIRD, Judge, dissenting.

{¶ 44} The majority's apparent recognition that there is no evidence in this case that the defendant either created something, or that whatever he may have created was false is, in my opinion, admirable. Its reliance upon the second portion of R.C. 2913.01(G), however, seems less so.

{¶ 45} In order to sustain this conviction, the majority opines that the defendant's conduct falls within the definition of forgery because it purported to authenticate a writing when that writing was not in fact authenticated by the conduct of the defendant, all in the language of R.C. 2913.01(G). That statute defines a term, but the proscribed conduct is set forth in R.C. 2913.31(A)(2), which prohibits the forging of any writing so that it purports to be genuine when actually it is spurious. Accordingly, however "forgery" may be defined, the

statute in question, by its plain terms, requires that the writing actually be spurious.

{¶ 46} There is no evidence in this case that the defendant created anything, that whatever may have been created was false, or that whatever was done was done with purpose to defraud. The first assignment of error should be sustained.